25

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

                    Plaintiff,

v.

**D-1    JAMES HENLEY,**
**D-2    TIMOTHY CROMER,**
**D-3    RICARDO HEARN,**

                    Defendants.

_____/

CRIMINAL NO. 13-20067

HON. GEORGE CARAM STEEH

VIOLATIONS: 18 U.S.C. §§ 371, 666
26 U.S.C. § 7203

FILED
2013 MAY 21 P 3: 26
U.S. DIST. COURT CLERK
EAST DIST. MICH.
DETROIT

## FIRST SUPERSEDING INDICTMENT

THE GRAND JURY CHARGES:

### GENERAL ALLEGATIONS

1. At all relevant times, the Detroit Public Library was a "public library" as defined by M.C.L. § 397.31, the "whole interests of which belong[s] to the general public," within the Eastern District of Michigan.

2. From approximately 2003 until approximately 2013, defendant TIMOTHY CROMER was an employee and agent of the Detroit Public Library. From approximately 2006 until his termination in 2013, defendant TIMOTHY CROMER served as the Detroit Public Library's Chief Administrative & Technology Officer.

3. The Detroit Public Library is an organization and local government agency that received benefits of a value in excess of $10,000 per year under a Federal Program for years 2007, 2008, 2009, and 2010.

4. At all relevant times, defendant JAMES HENLEY was the owner of Core Consulting & Professional Services. From about March 2007 to January 2008, Core Consulting received payments under information technology services contracts with the Detroit Public Library.

5. At all relevant times, defendant RICARDO HEARN was the owner of Cubemation, LLC. From about June 2008 to November 2010, Cubemation received payments under information technology services contracts with the Detroit Public Library.

**COUNT ONE**
(18 U.S.C. §§ 371, 666(a)(1)(B) - Conspiracy to Commit Bribery)

**D-1   JAMES HENLEY**
**D-2   TIMOTHY CROMER**

1. The grand jury incorporates by reference paragraphs 1 through 5 of the "General Allegations."

2. From about January 2007 until about September 2008, the exact dates being unknown to the grand jury, in Detroit, in the Eastern District of Michigan, Southern Division, and elsewhere, defendants TIMOTHY CROMER and JAMES HENLEY did unlawfully, willfully, and knowingly conspire and agree with each other and with other persons, known and unknown to the grand jury, to commit the crime of knowingly and corruptly accepting items of value by an agent of the Detroit Public Library, who intended to be influenced and rewarded in connection with a series of payments from the Detroit Public Library to HENLEY's business, named Core Consulting & Professional Services, which payments were valued at more than $5,000, in violation of Title 18, United States Code, Section 666(a)(1)(B).

## Manner and Means of the Conspiracy

3. It was part of the conspiracy that CROMER helped HENLEY create a business called Core Consulting, in which CROMER would be a silent partner.

4. It was further a part of the conspiracy that CROMER instructed HENLEY to prepare a proposal for Core Consulting to perform certain information technology work for the Detroit Public Library, even though, as they both well knew, HENLEY did not have experience or expertise in the information technology field.

5. It was further a part of the conspiracy that CROMER arranged for Core Consulting to win the contract to perform information technology work for the Detroit Public Library, and would approve various extensions and change orders to the contract, ultimately causing the Detroit Public Library to pay about $1.8 million to Core Consulting.

6. It was further a part of the conspiracy that CROMER would take official actions within the management of the Detroit Public Library which benefitted HENLEY and Core Consulting, and would not disclose to the administration of the Detroit Public Library CROMER'S financial relationship with HENLEY or Core Consulting.

7. It was further a part of the conspiracy that HENLEY would make his payments to CROMER by preparing checks to the order of Dacrotek, a company owned by CROMER, or by transferring funds from Core Consulting's bank account to Dacrotek's bank account.

8. It was part of the conspiracy that HENLEY would submit invoices on behalf of Core Consulting and that CROMER would approve payments on those invoices.

9. It was part of the conspiracy that CROMER terminated Core Consulting's contract with the Detroit Public Library on January 3, 2008, in an effort to prevent other officials at the Detroit Public Library from discovering CROMER'S financial relationship with Henley.

10. It was further part of the conspiracy that after CROMER terminated Core Consulting's contract with the Detroit Public Library, CROMER instructed HENLEY to continue to submit invoices on behalf of Core Consulting, which CROMER continued to approve for payment, from the time the contract was terminated in January 2008 until about September 2008, despite the fact that Core Consulting performed no work for the Library during this period of time.

11. It was further part of the conspiracy that CROMER demanded to receive substantial portions of the payments that Core Consulting received from the Detroit Public Library both before and after the January 3, 2008 termination of Core Consulting's contract with the Detroit Public Library, including for periods of time in which Core Consulting was performing no work at the Detroit Public Library, and that HENLEY paid CROMER at least $500,000 before the contract's termination and approximately $125,000 after the contract's termination.

## Overt Acts Which Furthered the Conspiracy

12. In order to further the conspiracy, the conspirators committed the following acts, among others, in the Eastern District of Michigan and elsewhere:

13. On about March 23, 2007, a check in the amount of $8,250 from a Core Consulting bank account at Chase Bank in Detroit was deposited into a Dacrotek bank account at Comerica Bank.

14. On about April 23, 2007, a check in the amount of $10,000 from a Core Consulting bank account at Comerica Bank was deposited into a Dacrotek bank account at Comerica Bank.

15. On about May 5, 2007, a check in the amount of $10,527 from a Core Consulting bank account at Comerica Bank was deposited into a Dacrotek bank account at Comerica Bank.

4

16. On about May 18, 2007, a check in the amount of $10,285 from a Core Consulting bank account at Comerica Bank was deposited into a Dacrotek bank account at Comerica Bank.

17. On about June 8, 2007, a check in the amount of $14,725 from a Core Consulting bank account at Comerica Bank was deposited into a Dacrotek bank account at Comerica Bank.

18. On about June 21, 2007, a check in the amount of $9,770 from JAMES HENLEY'S bank account at Chase Bank was deposited into a Dacrotek bank account at Comerica Bank.

19. On about June 27, 2007, a check in the amount of $29,306 from a Core Consulting bank account at Comerica Bank was deposited into a Dacrotek bank account at Comerica Bank.

20. On about June 30, 2007, a check in the amount of $10,000 from a Core Consulting bank account at Comerica Bank was deposited into a Dacrotek bank account at Comerica Bank.

21. On about June 30, 2007, a check in the amount of $13,917 from a Core Consulting bank account at Comerica Bank was deposited into a Dacrotek Bank account at Comerica Bank.

22. On about July 5, 2007, a check in the amount of $15,790 from a Core Consulting bank account at Comerica Bank was deposited into a Dacrotek bank account at Comerica Bank.

23. On about July 11, 2007, a check in the amount of $21,235 from a Core Consulting bank account at Comerica Bank was deposited into a Dacrotek bank account at Comerica Bank.

24. On about August 1, 2007, $18,648 was transferred from a Core Consulting bank account at Comerica Bank into a Dacrotek bank account at Comerica Bank.

25. On about August 28, 2007, $17,646 was transferred from JAMES HENLEY's bank account at Comerica Bank into a Dacrotek bank account at Comerica Bank.

26. On about September 13, 2007, $25,743 was transferred from JAMES HENLEY'S bank account at Comerica Bank into a Dacrotek bank account at Comerica Bank.

27. On about September 24, 2007, $39,140 was transferred from a Core Consulting bank account at Comerica Bank into a Dacrotek bank account at Comerica Bank.

28. On about October 5, 2007, $27,296 was transferred from a Core Consulting bank account at Comerica Bank into a Dacrotek bank account at Comerica Bank.

29. On about October 18, 2007, $54,000 was transferred from a Core Consulting bank account at Comerica Bank into a Dacrotek bank account at Comerica Bank

30. On about November 20, 2007, $14,925 was transferred from a Core Consulting bank account at Comerica Bank into a Dacrotek bank account at Comerica Bank

31. On about December 3, 2007, $33,512 was transferred from a Core Consulting bank account at Comerica Bank into a Dacrotek bank account at Comerica Bank.

32. On about December 27, 2007, $35,332 was transferred from a Core Consulting bank account at Comerica Bank into a Dacrotek bank account at Comerica Bank.

33. On about January 10, 2008, $52,936 was transferred from a Core Consulting bank account at Comerica Bank into a Dacrotek bank account at Comerica Bank.

34. On about March 5, 2008, HENLEY deposited $37,800 of Detroit Public Library funds into a Core Consulting bank account at Comerica Bank.

35. On about May 9, 2008, HENLEY deposited $53,350 of Detroit Public Library funds into a Core Consulting bank account at Comerica Bank.

36. On about June 6, 2008, HENLEY deposited $39,000 of Detroit Public Library funds into a Core Consulting bank account at Comerica Bank.

37. On about June 27, 2008, HENLEY deposited $68,415 of Detroit Public Library funds into a Core Consulting bank account at Comerica Bank.

38. On about July 24, 2008, HENLEY deposited $47,000 of Detroit Public Library funds into a Core Consulting bank account at Comerica Bank.

39. On about July 25, 2008, HENLEY deposited $11,300 of Detroit Public Library funds into a Core Consulting bank account at Comerica Bank.

40. On about September 3, 2008, HENLEY deposited $52,500 of Detroit Public Library funds into a Core Consulting bank account at Comerica Bank.

41. From about March 3, 2008 until about July 21, 2008, HENLEY delivered approximately $85,000 in United States currency to CROMER.

42. On about July 25, 2008, a check in the amount of $18,950 from a Core Consulting bank account at Comerica Bank in Detroit was deposited into a Dacrotek bank account at Comerica Bank.

43. On about September 3, 2008, a check in the amount of $21,500 from a Core Consulting bank account at Comerica Bank was deposited into a Dacrotek bank account at Comerica Bank.

All in violation of Title 18, United States Code, Section 371.

### COUNT TWO
(18 U.S.C. §§ 371, 666(a)(1)(B) - Conspiracy to Commit Bribery)

**D-2    TIMOTHY CROMER**
**D-3    RICARDO HEARN**

1. The Grand Jury incorporates by reference paragraphs 1 through 5 of the "General Allegations."

2. From about July 26, 2008 until about September 23, 2010, the exact dates being unknown to the grand jury, in Detroit, in the Eastern District of Michigan, Southern Division, and elsewhere, defendants TIMOTHY CROMER and RICARDO HEARN did unlawfully,

willfully, and knowingly conspire and agree with each other and with other persons, known and unknown to the grand jury, to commit the crime of knowingly and corruptly accepting items of value by an agent of the Detroit Public Library, who intended to be influenced and rewarded in connection with a series of payments from the Detroit Public Library to Cubemation, which payments were valued at more than $5,000, in violation of Title 18, United States Code, Section 666(a)(1)(B).

## Manner and Means of the Conspiracy

3. It was a part of the conspiracy that CROMER awarded no-bid, professional services contracts to Cubemation, causing the Detroit Public Library to pay Cubemation a total of at least $2.9 million for information technology services.

4. It was further a part of the conspiracy that CROMER demanded and HEARN agreed that HEARN would pay CROMER substantial portions of the payments Cubemation received from the Detroit Public Library to influence and reward CROMER for his assistance in obtaining the contracts, as a result of which agreement HEARN delivered to CROMER approximately $800,000 in United States currency during the course of the conspiracy.

5. It was further a part of the conspiracy that CROMER would take official actions within the management of the Detroit Public Library which benefitted Cubemation, and would not disclose to the administration of the Detroit Public Library his financial relationship with HEARN.

## Overt Acts Which Furthered the Conspiracy

6. In order to further the conspiracy, the conspirators committed the following acts, among others, in the Eastern District of Michigan and elsewhere:

7. On about July 26, 2008, HEARN delivered approximately $1,200 in United States currency to CROMER.

8. On about August 2, 2008, HEARN delivered approximately $1,200 in United States currency to CROMER.

9. On about August 9, 2008, HEARN delivered approximately $1,200 in United States currency to CROMER.

10. On about August 16, 2008, HEARN delivered approximately $1,200 in United States currency to CROMER.

11. On about August 23, 2008, HEARN delivered approximately $1,200 in United States currency to CROMER.

12. On about August 30, 2008, HEARN delivered approximately $1,200 in United States currency to CROMER.

13. On about September 6, 2008, HEARN delivered approximately $1,200 in United States currency to CROMER.

14. On about September 13, 2008, HEARN delivered approximately $1,200 in United States currency to CROMER.

15. On about September 20, 2008, HEARN delivered approximately $1,200 in United States currency to CROMER.

16. On about September 27, 2008, HEARN delivered approximately $1,200 in United States currency to CROMER.

17. On about October 4, 2008, HEARN delivered approximately $1,200 in United States currency to CROMER.

18. On about October 11, 2008, HEARN delivered approximately $1,200 in United States currency to CROMER.

19. On about October 18, 2008, HEARN delivered approximately $1,200 in United States currency to CROMER

20. On about October 25, 2008, HEARN delivered approximately $1,200 in United States currency to CROMER.

21. On about November 1, 2008, HEARN delivered approximately $1,200 in United States currency to CROMER.

22. On about November 8, 2008, HEARN delivered approximately $1,200 in United States currency to CROMER.

23. On about November 15, 2008, HEARN delivered approximately $1,200 in United States currency to CROMER.

24. On about November 19, 2008, HEARN delivered approximately $8,000 in United States currency to CROMER.

25. On about November 22, 2008, HEARN delivered approximately $1,200 in United States currency to CROMER.

26. On about November 25, 2008, HEARN delivered approximately $1,200 in United States currency to CROMER.

27. On about November 29, 2008, HEARN delivered approximately $8,000 in United States currency to CROMER.

28. On about December 5, 2008, HEARN delivered approximately $8,000 in United States currency to CROMER.

29. On about December 12, 2008, HEARN delivered approximately $8,000 in United States currency to CROMER.

30. On about December 19, 2008, HEARN delivered approximately $8,000 in United States currency to CROMER.

31. On about January 13, 2009, HEARN delivered approximately $8,000 in United States currency to CROMER.

32. On about January 16, 2009, HEARN delivered approximately $7,000 in United States currency to CROMER.

33. On about January 22, 2009, HEARN delivered approximately $7,000 in United States currency to CROMER.

34. On about January 29, 2009, HEARN delivered approximately $8,650 in United States currency to CROMER.

35. On about February 5, 2009, HEARN delivered approximately $8,650 in United States currency to CROMER.

36. On about February 12, 2009, HEARN delivered approximately $8,650 in United States currency to CROMER.

37. On about February 18, 2009, HEARN delivered approximately $8,650 in United States currency to CROMER.

38. On about February 25, 2009, HEARN delivered approximately $8,650 in United States currency to CROMER.

39. On about March 5, 2009, HEARN delivered approximately $8,650 in United States currency to CROMER.

40. On about March 12, 2009, HEARN delivered approximately $8,650 in United States currency to CROMER.

41. On about March 19, 2009, HEARN delivered approximately $8,650 in United States currency to CROMER.

42. On about April 1, 2009, HEARN delivered approximately $17,300 in United States currency to CROMER.

43. On about April 9, 2009, HEARN delivered approximately $8,650 in United States currency to CROMER.

44. On about April 16, 2009, HEARN delivered approximately $8,650 in United States currency to CROMER.

45. On about April 23, 2009, HEARN delivered approximately $8,650 in United States currency to CROMER.

46. On about April 30, 2009, HEARN delivered approximately $8,650 in United States currency to CROMER.

47. On about May 6, 2009, HEARN delivered approximately $8,650 in United States currency to CROMER.

48. On about May 7, 2009, HEARN delivered approximately $17,300 in United States currency to CROMER.

49. On about May 28, 2009, HEARN delivered approximately $8,650 in United States currency to CROMER.

50. On about June 4, 2009, HEARN delivered approximately $8,650 in United States currency to CROMER.

51. On about June 11, 2009, HEARN delivered approximately $17,300 in United States currency to CROMER.

52. On about June 25, 2009, HEARN delivered approximately $8,650 in United States currency to CROMER.

53. On about July 2, 2009, HEARN delivered approximately $16,000 in United States currency to CROMER.

54. On about July 9, 2009, HEARN delivered approximately $16,000 in United States currency to CROMER.

55. On about July 15, 2009, HEARN delivered approximately $8,000 in United States currency to CROMER.

56. On about July 23, 2009, HEARN delivered approximately $12,900 in United States currency to CROMER.

57. On about August 4, 2009, HEARN delivered approximately $8,600 in United States currency to CROMER.

58. On about August 20, 2009, HEARN delivered approximately $8,600 in United States currency to CROMER.

59. On about September 3, 2009, HEARN delivered approximately $8,600 in United States currency to CROMER.

60. On about September 17, 2009, HEARN delivered approximately $8,600 in United States currency to CROMER.

61. On about October 1, 2009, HEARN delivered approximately $8,600 in United States currency to CROMER.

62. On about October 15, 2009, HEARN delivered approximately $8,600 in United States currency to CROMER.

63. On about October 24, 2009, HEARN delivered approximately $17,200 in United States currency to CROMER.

64. O On about November 6, 2009, HEARN delivered approximately $17,200 in United States currency to CROMER.

65. On about November 17, 2009, HEARN delivered approximately $17,200 in United States currency to CROMER.

66. On about November 24, 2009, HEARN delivered approximately $17,200 in United States currency to CROMER.

67. On about December 3, 2009, HEARN delivered approximately $17,200 in United States currency to CROMER.

68. On about December 10, 2009, HEARN delivered approximately $17,200 in United States currency to CROMER.

69. On about December 17, 2009, HEARN delivered approximately $17,200 in United States currency to CROMER.

70. On about December 23, 2009, HEARN delivered approximately $17,200 in United States currency to CROMER.

71. On about February 17, 2010, HEARN delivered approximately $16,000 in United States currency to CROMER.

72. On about February 25, 2010, HEARN delivered approximately $16,000 in United States currency to CROMER.

73. On about March 4, 2010, HEARN delivered approximately $8,000 in United States currency to CROMER.

74. On about March 25, 2010, HEARN delivered approximately $17,000 in United States currency to CROMER.

75. On about April 8, 2010, HEARN delivered approximately $17,000 in United States currency to CROMER.

76. On about April 22, 2010, HEARN delivered approximately $17,000 in United States currency to CROMER.

77. On about May 6, 2010, HEARN delivered approximately $17,000 in United States currency to CROMER.

78. On about May 19, 2010, HEARN delivered approximately $17,000 in United States currency to CROMER.

79. On about June 3, 2010, HEARN delivered approximately $17,000 in United States currency to CROMER.

80. On about June 17, 2010, HEARN delivered approximately $17,000 in United States currency to CROMER.

81. On about July 1, 2010, HEARN delivered approximately $17,000 in United States currency to CROMER.

82. On about July 15, 2010, HEARN delivered approximately $17,000 in United States currency to CROMER.

83. On about July 29, 2010, HEARN delivered approximately $17,000 in United States currency to CROMER.

84. On about August 11, 2010, HEARN delivered approximately $17,000 in United States currency to CROMER.

85. On about August 27, 2010, HEARN delivered approximately $17,000 in United States currency to CROMER.

86. On about September 9, 2010, HEARN delivered approximately $17,000 in United States currency to CROMER.

87. On about September, 2010, HEARN delivered approximately $17,000 in United States currency to CROMER.

All in violation of Title 18, United States Code, Section 371.

**COUNT THREE THROUGH COUNT SIXTEEN**
(18 U.S.C. §§ 666(a)(1)(B) and 2 – Receipt of Bribes by A Public Official)

**D-1    JAMES HENLEY**
**D-2    TIMOTHY CROMER**
**D-3    RICARDO HEARN**

1. The Grand Jury incorporates by reference paragraphs 1 through 5 of the "General Allegations," paragraphs 1 through 43 of Count One, and paragraphs 1 through 87 of Count Two, above, as if they were set forth in full herein.

2. From about June 6, 2008 and until about September 23, 2010, in the Eastern District of Michigan, Southern Division, defendant TIMOTHY CROMER, knowingly and willfully aided and abetted by JAMES HENLEY and RICARDO HEARN, corruptly solicited, demanded, and accepted items of value from JAMES HENLEY and RICARDO HEARN totaling more than $900,000, with the intent to be influenced and rewarded in connection with a series of contracts involving the Detroit Public Library, which contracts were valued at more than $5,000, in violation of Title 18, United States Code, Section 666(a)(1)(B).

On or about each of the dates set forth below, in the Eastern District of Michigan, Southern Division, defendant TIMOTHY CROMER did accept the items of value listed below, each constituting a separate count of this indictment:

| Defendants | Count | Date and Description of Bribe |
|---|---|---|
| D-1 & D-2 | Three | On about June 6, 2008, HENLEY gave CROMER about $20,000 in United States currency. |
| D-1 & D-2 | Four | On about June 25, 2008, HENLEY gave CROMER about $7,600 in United States currency. |
| D-2 & D-3 | Five | On about July 26, 2008, HEARN paid CROMER about $1,200 in United States currency. |
| D-1 & D-2 | Six | On about July 25, 2008, a check in the amount of $18,950 from a Core Consulting bank account at Comerica Bank in Detroit was deposited into a Dacrotek bank account at Comerica Bank. |
| D-1 & D-2 | Seven | On about September 4, 2008, a check in the amount of $21,500 from a Core Consulting bank account at Comerica Bank was deposited into a Dacrotek bank account at Comerica Bank. |
| D-2 & D-3 | Eight | On about November 19, 2008, HEARN paid CROMER about $8,000 in United States currency. |
| D-2 & D-3 | Nine | On about April 1, 2009, HEARN paid CROMER about $17,300 in United States currency. |
| D-2 & D-3 | Ten | On about May 7, 2009, HEARN paid CROMER about $17,300 in United States currency. |
| D-2 & D-3 | Eleven | On about July 2, 2009, HEARN paid CROMER about $16,000 in United States currency. |
| D-2 & D-3 | Twelve | On about November 24, 2009, HEARN paid CROMER about $17,200 in United States currency. |
| D-2 & D-3 | Thirteen | On about December 23, 2009, HEARN paid CROMER about $17,200 in United States currency. |
| D-2 & D-3 | Fourteen | On about February 17, 2010, HEARN paid CROMER about $16,000 in United States currency. |
| D-2 & D-3 | Fifteen | On about April 8, 2010, HEARN paid CROMER about $17,000 in United States currency. |
| D-2 & D-3 | Sixteen | On about September 23, 2010, HEARN paid CROMER about $17,000 in United States currency. |

All in violation of Title 18, United States Code, Sections 666(a)(1)(B) and 2.

## COUNT SEVENTEEN
(18 U.S.C. §§ 371, 666(a)(1)(B) - Conspiracy to Commit Program Fraud)

**D-1   JAMES HENLEY**
**D-2   TIMOTHY CROMER**

1. The Grand Jury incorporates by reference paragraphs 1 through 5 of the "General Allegations," and paragraphs 1 through 43 of Count One.

2. From about January 2008 until about September 2008, the exact dates being unknown to the grand jury, in Detroit, in the Eastern District of Michigan, Southern Division, and elsewhere, defendant TIMOTHY CROMER and JAMES HENLEY did unlawfully, willfully, and knowingly conspire and agree with each other and with other persons, known and unknown to the grand jury, to commit the crime of knowingly stealing, obtaining by fraud and without authority knowingly converting to their own use more than $5,000 in funds that were owned by the Detroit Public Library, in violation of Title 18, United States Code, Section 666(a)(1)(A).

### Means and Manner of the Conspiracy

3. It was part of the conspiracy that CROMER instructed HENLEY to submit invoices on behalf of Core Consulting after the January 3, 2008 termination of Core Consulting's contract with the Detroit Public Library, and for periods of time in which Core Consulting was performing no work at the Detroit Public Library.

4. It was further part of the conspiracy that CROMER approved payments on the invoices that Core Consulting submitted to the Detroit Public Library after the January 3, 2008 termination of Core Consulting's contract with the Detroit Public Library, and for periods of time in which Core Consulting was performing no work at the Detroit Public Library.

18

5. It was further part of the conspiracy that CROMER demanded to receive substantial portions of the payments that Core Consulting received from the Detroit Public Library after the January 3, 2008 termination of Core Consulting's contract with the Detroit Public Library, and for periods of time in which Core Consulting was performing no work at the Detroit Public Library, and that HENLEY paid CROMER approximately $125,000 during that time period.

## Overt Acts Which Furthered the Conspiracy

6. In order to further the conspiracy, the conspirators committed the following acts, among others, in the Eastern District of Michigan and elsewhere:

7. On March 3, 2008, HENLEY deposited $37,800 of Detroit Public Library funds into a Core Consulting bank account at Comerica Bank.

8. On May 8, 2008, HENLEY deposited $53,350 of Detroit Public Library funds into a Core Consulting bank account at Comerica Bank.

9. On June 6, 2008, HENLEY deposited $39,000 of Detroit Public Library funds into a Core Consulting bank account at Comerica Bank.

10. On June 27, 2008, HENLEY deposited $68,415 of Detroit Public Library funds into a Core Consulting bank account at Comerica Bank.

11. On July 24, 2008, HENLEY deposited $47,000 of Detroit Public Library funds into a Core Consulting bank account at Comerica Bank.

12. On July 24, 2008, HENLEY deposited $11,300 of Detroit Public Library funds into a Core Consulting bank account at Comerica Bank.

13. On September 3, 2008, HENLEY deposited $52,500 of Detroit Public Library funds into a Core Consulting bank account at Comerica Bank.

14. From about March 3, 2008 until about July 21, 2008, HENLEY delivered approximately $85,000 in United States currency to CROMER.

15. On July 25, 2008, a check in the amount of $18,950 from a Core Consulting bank account at Comerica Bank in Detroit was deposited into a Dacrotek bank account at Comerica Bank.

16. On September 3, 2008, a check in the amount of $21,500 from a Core Consulting bank account at Comerica Bank was deposited into a Dacrotek bank account at Comerica Bank.

All in violation of Title 18, United States Code, Section 371.

## COUNT EIGHTEEN
(26 U.S.C. § 7203 – Failure to File Income Tax Return)

**D-1   JAMES HENLEY**

1. During the calendar year 2007, defendant JAMES HENLEY, who was a resident of Detroit, Michigan, received gross income of about $1,137,000 from the Detroit Public Library.

2. By reason of this gross income, JAMES HENLEY was required by law to make an income tax return to the Internal Revenue Service stating specifically the items of his gross income and any deductions and credits to which he was entitled, and was required to file such return on or before April 15, 2008.

3. Well knowing and believing all of the foregoing, defendant JAMES HENLEY willfully failed to make and file an income tax return in the Eastern District of Michigan and elsewhere on about April 15, 2008.

   All in violation of Title 26, United States Code, Section 7203.

## COUNT NINETEEN
(26 U.S.C. § 7203 – Failure to File Corporate Tax Return)

**D-1    JAMES HENLEY**

1. During the calendar year 2007, defendant JAMES HENLEY, who was a resident of Detroit, Michigan, was the president of Core Consulting, Inc.

2. Core Consulting, Inc. was a business not exempt from tax, with its principal place of business in Detroit, Michigan.

3. During calendar year 2007, Core Consulting, Inc. received gross income of about $1,137,000 from the Detroit Public Library.

4. By reason of this gross income, JAMES HENLEY was required by law to make an income tax return to the Internal Revenue Service on behalf of Core Consulting, Inc., stating specifically the items of its gross income and any deductions and credits to which it was entitled, and was required to file such return on or before April 15, 2008.

5. Well knowing and believing all of the foregoing, defendant JAMES HENLEY willfully failed to make and file a corporate income tax return in the Eastern District of Michigan and elsewhere on about April 15, 2008.

   All in violation of Title 26, United States Code, Section 7203.

## COUNT TWENTY
(26 U.S.C. § 7203 – Failure to File Income Tax Return)

**D-1    JAMES HENLEY**

1. During the calendar year 2008, defendant JAMES HENLEY, who was a resident of Detroit, Michigan, received gross income of about $410,000 from the Detroit Public Library.

2. By reason of this gross income, JAMES HENLEY was required by law to make an income tax return to the Internal Revenue Service stating specifically the items of his gross income

and any deductions and credits to which he was entitled, and was required to file such return on or before April 15, 2009.

3.  Well knowing and believing all of the foregoing, defendant JAMES HENLEY willfully failed to make and file an income tax return in the Eastern District of Michigan and elsewhere on about April 15, 2009.

   All in violation of Title 26, United States Code, Section 7203.

## COUNT TWENTY-ONE
(26 U.S.C. § 7203 – Failure to File Corporate Tax Return)

**D-1    JAMES HENLEY**

1.  During the calendar year 2008, defendant JAMES HENLEY, who was a resident of Detroit, Michigan, was the president of Core Consulting, Inc.

2.  Core Consulting, Inc. was a business not exempt from tax, with its principal place of business in Detroit, Michigan.

3.  During calendar year 2008, Core Consulting, Inc. received gross income of about $410,000 from the Detroit Public Library.

4.  By reason of this gross income, JAMES HENLEY was required by law to make an income tax return to the Internal Revenue Service on behalf of Core Consulting, Inc., stating specifically the items of its gross income and any deductions and credits to which it was entitled, and was required to file such return on or before April 15, 2009.

5.  Well knowing and believing all of the foregoing, defendant JAMES HENLEY willfully failed to make and file a corporate income tax return in the Eastern District of Michigan and elsewhere on about April 15, 2009.

All in violation of Title 26, United States Code, Section 7203.

## **FORFEITURE ALLEGATIONS**

Pursuant to Fed.R.Cr.P. 32.2(a), the government hereby provides notice to defendant TIMOTHY CROMER of its intention to seek forfeiture of all proceeds, direct or indirect, or property traceable thereto, all property that facilitated the commission of the violations alleged, or property traceable thereto, and all property involved in, or property traceable thereto, of the violations set forth in Counts One through Seventeen of this Indictment.

Pursuant to Fed.R.Cr.P. 32.2(a), the government hereby provides notice to defendant JAMES HENLEY of its intention to seek forfeiture of all proceeds, direct or indirect, or property traceable thereto, all property that facilitated the commission of the violations alleged, or property traceable thereto, and all property involved in, or property traceable thereto, of the violations set forth in Counts One and Seventeen of this Indictment.

Pursuant to Fed.R.Cr.P. 32.2(a), the government hereby provides notice to defendant RICARDO HEARN of its intention to seek forfeiture of all proceeds, direct or indirect, or property traceable thereto, all property that facilitated the commission of the violations alleged, or property traceable thereto, and all property involved in, or property traceable thereto, of the violations set forth in Counts Two of this Indictment.

THIS IS A TRUE BILL

s/Grand Jury Foreperson
GRAND JURY FOREPERSON

BARBARA L. McQUADE
United States Attorney

s/Elizabeth A. Stafford
ELIZABETH A. STAFFORD (P48866)
Assistant United States Attorney
211 W. Fort, Suite 2001
Detroit, MI 48226
Telephone: (313) 226-9692
Email: elizabeth.stafford@usdoj.gov

Dated: May 21, 2013

| United States District Court<br>Eastern District of Michigan | **Criminal Case Cover Sheet** | Case Number<br>13-20067 |
|---|---|---|

NOTE: It is the responsibility of the Assistant U.S. Attorney signing this form to complete it accurately in all respects.

**Reassignment/Recusal Information** This matter was opened in the USAO prior to August 15, 2008    **[  ]**

| **Companion Case Information** | Companion Case Number: |
|---|---|
| This may be a companion case based upon LCrR 57.10 (b)(4)[1]: | Judge Assigned: |
| ☐ Yes    ☒ No | AUSA's Initials: |

**Case Title:** USA v.    D-1 JAMES HENLEY, et al

**County where offense occurred :**    Wayne

**Check One:**    ☒ **Felony** | Counts 1-17    ☒ **Misdemeanor** Counts 18-21    ☐ **Petty**

_____Indictment/_____Information --- **no prior complaint.**

_____Indictment/_____Information --- based upon prior complaint [Case number:

✓ Indictment/_____Information --- based upon LCrR 57.10 (d) *[Complete Superseding section below]*.

**Superseding Case Information**

**Superseding to Case No:**    13-20067          **Judge:**    GEORGE CARAM STEEH

☐ Original case was terminated; no additional charges or defendants.
☐ Corrects errors; no additional charges or defendants.
☐ Involves, for plea purposes, different charges or adds counts.
☒ Embraces same subject matter but adds the additional defendants or charges below:

| **Defendant name** | **Charges** | **Prior Complaint (if applicable)** |
|---|---|---|
| D-2  TIMOTHY CROMER | 18 USC §§371, 666a1B | N/A |
| D-3  RICARDO HEARN | 18 USC §§371, 666a1B | N/A |

**Please take notice that the below listed Assistant United States Attorney is the attorney of record for the above captioned case.**

May 21, 2013
Date

ELIZABETH A. STAFFORD
Assistant United States Attorney
211 W. Fort Street, Suite 2001
Detroit, MI  48226-3277
Phone: 313-226-9692
Fax:    313-226-3413
E-Mail address: Elizabeth.Stafford@usdoj.gov
Attorney Bar #:  P48866

[1] Companion cases are matters in which it appears that (1) substantially similar evidence will be offered at trial, (2) the same or related parties are present, and the cases arise out of the same transaction or occurrence. Cases may be companion cases even though one of them may have already been terminated.

04/13