UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

                    Plaintiff,                    Case No:  13-20067
                                                Hon. George Caram Steeh

-vs-

D-2  TIMOTHY CROMER,

                    Defendant.

_____

## DEFENDANT CROMER'S SENTENCING MEMORANDUM REQUEST FOR VARIANCE

On April 15, 2014, Timothy Cromer, a 47 year old man, pled guilty to two of the counts in the pending indictment against him.  In exchange for a plea of guilty to those two counts, the Government will be moving to dismiss the remaining counts pending against him at the time of sentencing.  The offenses Mr. Cromer pled guilty to are Conspiracy to Commit Bribery (18 USC §666(a)(1)(B)) and Receipt of Bribes by a Public Official, Aiding and Abetting (18 USC §666(a)(1)(B) and 18 USC §2A).  His plea was taken pursuant to a Rule 11 Plea Agreement.  The parties did not agree on a guideline range.  The parties also agreed that Mr. Cromer would forfeit Forty Three Thousand One Hundred Ninety Dollars and Thirteen Cents ($43,190.13) in U.S. Currency.  Mr. Cromer also

1

agreed to a money judgment against him in the amount of the proceeds he derived from the violations, less $43,190.13.

The Probation Department calculated the guidelines range finding Mr. Cromer's Offense Level to be 37 and his Criminal History Category to be II[1].   In terms of the Offense Level, the Probation Department assessed fourteen levels as the Base Offense Level. (The Probation Department assessed fourteen levels as opposed to twelve levels because Mr. Cromer was a public employee within the meaning of USSG 2C1.1(a)(1).).  The Probation Department also added two levels because the instant offense involved more than one bribe USSG 2C1.1(b)(1).  The Probation Department also added an additional eighteen levels because the value of payment was more than $2,500,000.00 and less than $7,000,000.00.  Another four levels were added purportedly because Mr. Cromer was the Chief Administrative and Technology Officer at the Detroit Public Library. USSG 2C1.1(b)(3).  Finally two levels were added because Mr. Cromer was considered a leader, organizer, manager, or supervisor pursuant to USSG 3B1.1(c).  This gave Mr. Cromer an adjusted Offense Level of 40.  After acceptance of responsibility levels were deducted, the Probation Department found a total Offense Level of 37.

Mr. Cromer filed objections to the guideline calculations prepared by the Probation Department.  At the time of sentencing, the only objection that Mr.

---

[1] Mr. Cromer does not have any objection to the Probation Department's scoring of his Criminal History Category.

Cromer will proceed with in terms of the guideline calculations is the assessment of 4 levels pursuant to USSG 2C1.1(b)(3).

The purpose of his memorandum is to urge the court to grant a variance from the guideline range and impose a sentence on Mr. Cromer, which would be consistent with the purposes of sentencing set forth in 18 USC §3553(a).

## DISCUSSION

### 1.  18 USC §3553(a)

18 USC §3553(a) requires a sentencing judge to "impose a sentence sufficient, **but not greater than necessary**, to comply with the purposes set forth in paragraph (2) of this subsection."   (Emphasis added).   18 USC §3553(a)(2) states that such purposes are:

> (A) To reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>
> (B) To afford adequate deterrence to criminal conduct;
>
> (C) To protect the public from further crimes of the defendant; and
>
> (D) To provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

In addition to subsection (2), 18 USC §3553(a) further requires a sentencing judge to consider:

3

(1) The nature and circumstances of the offense and history and characteristics of the defendant;

(3) The kinds of sentence available;

(4) The kinds of sentence and the sentencing range established for the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines. . . ;

(5) Any pertinent policy statement issued by the Sentencing Commission. . . ;

(6) The need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(7) The need to provide restitution to any victims of the offense.

2. **The seriousness of the offense**.

There is no doubt that Mr. Cromer committed serious offenses and he is the first to acknowledge that fact. He is fully aware that he abused his position within the Detroit Public Library.  He took advantage of the incompetent management at the Detroit Public Library and he deeply regrets this.  He makes no excuses for his conduct and apologizes to all who were hurt by his actions.[2]

---

[2] The two contracts that Mr. Cromer was involved with came to approximately 5,000,000.00.  Upon information and belief, the Detroit Public Library did receive a benefit from these contracts.  In fact, had the Detroit Public Library hired a Fortune 500 or Fortune 1000 Company to do the work the two entitles in this case did the cost to the library would have been much greater than $5,000,000.00.   Nevertheless, Mr. Cromer understands that this in no way excuses his criminal conduct.

3.  **The history and characteristics of the defendant**.

Mr. Cromer is 47 years old.  He is married to Simone Cromer and has been so married since January of 2013.  Mr. Cromer has five children.  His first three children, Erick, Timothy and Tyson were products of his first marriage.  Erick and Timothy are college students and Tysen is in ninth grade.   Erick, Timothy, and Tysen split time between their mother and Mr. Cromer.  Mr. Cromer also has a child, Ryan, who is three months old with Simore, his current wife.

Mr. Cromer was not abused as a child.  His parents placed a huge emphasis on acquiring employment and making money as opposed to education.  In fact, Mr. Cromer dropped out of high school his sophomore year to help support his family. Mr. Cromer acquired his GED in 1990.   In 2013, Mr. Cromer acquired his Bachelors Degree from Wayne State University.

Although his wife and three sons (by his first marriage) were devastated by Mr. Cromer's involvement in this offense, they remain supportive. This is despite the numerous news/blog accounts of Mr. Cromer's criminal activity.

Mr. Cromer's health is not in the best of condition.  Mr. Cromer suffers from hypertension, kidney cysts, elevated PSA levels, and hypercholesterolemia and as such he is on numerous medications. He suffers from depression and anxiety.  He has also received mental health treatment on occasion to help him deal with these problems.

Mr. Cromer also has substance abuse issues of his own involving alcohol and marijuana.   Probation Department conducted a drug assessment test on Mr. Cromer, which placed him in a high-risk category for substance abuse.

In light of Mr. Cromer's problems with marijuana and alcohol, the Court should recommend that he participate in the Bureau of Prisons drug and alcohol program (RDAP) while he is serving his sentence.

4. **Variances**

As this Court well knows, variances from the sentencing guidelines have become commonplace since the Supreme Court's decisions in Booker and Gall.  In addition to rendering the guidelines advisory rather than mandatory, the Court has also held that a district court may consider arguments that "the Guidelines sentence itself fails properly to reflect §3553(a) considerations." *Rita v United States*, 551 US 338 (2007).  A district court may also vary from guideline ranges based solely on policy considerations, including disagreements with the guidelines. *Kimbrough v United States*, 552 US 85 (2007).  In these decisions, the Supreme Court has approved of the notion that the sentencing judge "has greater familiarity with an individual case and individual defendants than the Commission or the appeals court and is therefore in a superior position to find facts and judge their import under §3553(a) in each particular case." *Kimbrough, supra* at 574 (quoting *Gall, supra*).

6

In the instant case, there are two significant reasons for the Court to grant a significant variance from the advisory guideline range.   Those reasons are the sentences that the codefendants will likely receive and the overlapping enhancements overstate the seriousness of the offenses for which Mr. Cromer is being sentenced.

**A.     Sentences Codefendants will likely receive.**

There are two codefendants in this case, James Henley and Ricardo Hearn. Admit tingly neither one is as culpable as Mr. Cromer in this case.  However, both profited just as much as Mr. Cromer did from their criminal conduct. Nevertheless, Mr. Henley and Mr. Hearn's exposure is capped at 60 months.  Upon information and belief the Government will be asking for a variance because of both of these individuals cooperation.  Mr. Cromer's sentence should not grossly exceed the sentences of the codefendants.

The Government pointed out the decades in prison a number of public officials convicted of corruption related offenses received as sentences due to their criminal conduct.  What the Government failed to point out is the majority of these public officials went to trial and was convicted.   In this case, Mr. Cromer has accepted responsibility for his criminal conduct by pleading guilty thus saving the Government the monies and energy that would a trial would encompass.

Mr. Cromer would also ask the Court to consider some of the sentences that were imposed on public officials in this district that did in fact plead guilty.  For example,

| Defendant | Charge | Period of Incarceration |
| --- | --- | --- |
| Michael Grundy | Honest Service Wire Fraud | 78 Months |
| Diane Hathaway | Bank Fraud | One Year and a day |
| Monica Conyers | Bribery/Conspiracy | 37 Months |
| James Rosendall[3] | Bribery/Conspiracy | 11 Months |
| Derrick Miller [4] | Bribery | 1 day. |

**B.      Overlapping enhancement overstates the seriousness of the offense.**

There are a number of cases that stand for the proposition that variances may be granted where overlapping enhancements overstate the seriousness of the offense.   In *United States v Threadgill,* 172 F3d 357 (5th Cir 1999), a pre-*Booker/Gall* case involving the issue of whether one charge (money laundering) was merely incidental to another (gambling), the Court summarized the district court's decision to grant a downward departure as follows:

> In the present action, the district court cited two separate factors in support of its decision to depart.  The court first found that the defendants' money laundering activities were incidental to the gambling operation.  The court next found that the defendants' conduct was atypical

---

[3] Mr. Rosendall bribed Monica Conyers so that she would vote in favor of the Synagro Sludge Contract.  This contract had a value of more than 700 million dollars.  Mr. Rosendall's offense level was 37.  The same offense level as the Probation Department calculated for Mr. Cromer.

[4] Upon information and belief, Mr. Miller profited over 1 million dollars from his criminal conduct.

8

because the defendants never used the laundered money to further other criminal activities.  Based on those two factors, the district court departed downward under U.S.S.G. §5K2.0, sentencing each of the defendants to 42 months imprisonment.

The Court then affirmed the downward departures and lower sentences.[5]

The same decision was reached in *United States v Woods*, 159 F3d 1132 (8th Cir 1998), another pre-*Booker/Gall* case.  In that case, the Court again approved of a downward departure granted by the district court in a bankruptcy fraud case that also included a money laundering count, summarizing the case as follows:

> In Ms. Woods's case, the District Court found that because the underlying offense was bankruptcy fraud, and not drug trafficking or some other offense typical of organized crime, the facts of her money laundering did not fall into the "heartland of cases involving that offense.  The Court thought the sentence for bankruptcy fraud would more appropriately reflect the severity of the money-laundering offense.  We believe ample evidence exists in the record, in the case law, and in the legislative and administrative history of the money-laundering guidelines to support the District Court's downward departure.

The Court then concluded:

> In summary, we do not believe the deposit of the check by Ms. Woods into her husband's account, or the obtaining of the cashier's checks, constitutes serious money-laundering conduct as contemplated by the Sentencing Commission for punishment under the money-laundering guidelines.  At least the District Court

---

[5] This case is particularly instructive on this issue because it involved the higher, pre-*Booker/Gall* standard rather than the more lenient standard set forth in §3553(a).

could have so found within its discretion. This is not the sort of conduct one normally thinks of as money laundering. Accordingly, we hold that the District Court did not abuse its discretion where it found that Ms. Woods's case fell outside the "heartland" and granted her motion for a downward departure.[6]

In *United States v Lauersen*, 343 F3d 604 (2nd Cir. 2003), the Second Circuit ruled that in some circumstances an accumulation of somewhat overlapping enhancements, even if not amounting to double counting, can justify a downward departure. As a result, the Court remanded the case to the district court with instruction that the district court "may exercise discretion to mitigate the effect of the enhancements by making a downward departure."

In *United States v Jackson*, 346 F3d 22 (2nd Cir 2003), a fraud case that also preceded *Booker* and *Gall*, the Second Circuit discussed the availability of a downward departure because of the cumulative effect of several enhancements to the defendant's base offense level:

> Jackson's sentence illustrates the type of case that is eligible for a *Lauersen* departure. Although the enhancements imposed by the District Court are permissible, they are all little more than different ways of characterizing closely related aspects of Jackson's fraudulent scheme. Thus, his base level of 6 was increased 10 levels because his offense involved a large sum of money, another 2 levels because he carefully planned the activity, another 2 levels because he used sophisticated means and another 4 levels because the

---

[6] Again this case involved the higher, pre-*Booker/Gall* standard for downward departures rather than for §3553(a) variances.

scheme was extensive.  Even though these enhancements are sufficiently distinct to escape the vice of double counting, they substantially overlap.  Most fraud schemes that obtain more than one half million dollars involve careful planning, some sophisticated techniques, and are extensive.

The Court then went on to discuss an aspect of the guidelines that can lead to excessive sentences:

> Moreover, a phenomenon of the Guidelines, graphically illustrated by this case, is that any one enhancement increases the sentencing range by a far greater amount when the enhancement is combined with other enhancements than would occur if only one enhancement had been imposed.  (Citation omitted).  Here, the four level role enhancement for an extensive scheme would have increased the minimum of the applicable sentencing range by 12 months of no other enhancement applied, but because three other enhancements applied, the four level role enhancement for leadership of an extensive scheme increased the minimum of the applicable sentencing range by 26 months.

The case was then remanded to the district court for the consideration of a downward departure.

Perhaps the most blunt analysis of the effect of multiple overlapping enhancements on the sentencing guidelines occurred in *United States v Parris*, 573 F Supp2d 744 (EDNY 2008), where the district court began its opinion as follows:

> I have sentenced Lennox and Lester Parris today to a term of incarceration of 60 months in the face of an advisory guidelines range of 360 to life.  This case represents another example where the guidelines in a securities-fraud prosecution "have to run amok that they

11

are patently absurd on their face." *United States v Adelson*, 441 F Supp2d 506, 515 (SDNY 2006), due to the "kind of piling-on of points for which the guidelines have frequently been criticized." *Id* at 510.

The district court then described the effort that went into finding a way to avoid the draconian result that application of the guidelines calculation would have wrought:

> Consequently, the Government joined me and defense counsel in a collaborative effort to each for an effective means to avoid what Judge Rakoff has appropriately described as "the utter travesty of justice that sometimes results from the guidelines' fetish with absolute arithmetic, as well as the harm that guideline calculations can visit on human beings if not cabined by common sense." *Adelson*, 441 FSupp2d at 512.

In the instant case, the guideline computations were driven to a large extent by overlapping enhancements that overstate the seriousness of the offense. In terms of the Offense Level, the Probation Department initially assessed fourteen levels as the Base Offense Level. (The Probation Department assessed fourteen levels as opposed to twelve levels because Mr. Cromer was a public employee within the meaning of USSG 2C1.1(a)(1).). The Probation Department also added another two levels because the instant offense involved more than one bribe USSG 2C1.1(b)(1). The Probation Department also added an additional eighteen levels because the value of payment was more than $2,500,000.00 and less than $7,000,000.00. Yet four more levels were added purportedly because Mr. Cromer

was the Chief Administrative and Technology Officer at the Detroit Public Library. USSG 2C1.1(b)(3). Finally two levels were added because Mr. Cromer was considered a leader, organizer, manager, or supervisor pursuant to USSG 3B1.1(c). The application of all of these enhancements resulted in an adjusted offense level of 40, a total offense level of 37, and a guideline range of 235-293 months.

There is no doubt that the multiple overlapping enhancements significantly increased Mr. Cromer's guideline range. In addition to the 18-level enhancement for the loss amount, four more levels were added for Mr. Cromer purportedly being a public official, this was in addition to the two levels that were added because Mr. Cromer was a public employee to get the base offense level from 12 to 14. An additional two levels were added because there was more than one bribe. Finally, two additional levels were added because he was a leader or organizer, which anyone would be in his position who accepted a bribe.

In sum, the combination of these overlapping enhancements overstates the seriousness of the offense in a manner that the guidelines did not reasonably contemplate. It is, therefore, no surprise that the Sentencing Commission recently announced that it plans to consider changes to the sentencing guidelines for certain white-collar, i.e. fraud offense. Without the additional eight levels (four for purportedly being a public official, two for being a manager, and two levels for

more than one bribe, Mr. Cromer's sentencing guideline range would be 97-121 months, which is far more appropriate range from which to begin the §3553(a) analysis.

<div align="center">

**CONCLUSION**

</div>

Given the sentences that the codefendants are likely to receive as well as the overlapping enhancements in the sentencing guidelines in this particular case, Mr. Cromer respectfully requests a sentence of 84 months.

<div style="margin-left:40%">

Respectfully submitted,

 */s/ Ben M. Gonek*
BEN M. GONEK (P43716)
Attorney for Defendant
500 Griswold, Suite 3500
Detroit, Michigan  48226
313.962.5210
Ben@goneklaw.com

</div>

Dated:  September 11, 2014

<div align="center">

**CERTIFICATE OF SERVICE**

</div>

BEN M. GONEK hereby states that on the 11th day of September 2014, he caused the foregoing Memorandum to be filed electronically with the United States District Court and that copies of said appearance was forwarded to all counsel of record using the ecf system.

<div style="margin-left:40%">

 */s/ Ben M. Gonek*
BEN M. GONEK (P43716)

</div>